### In re UNITED FUNDS MANAGEMENT CORPORATION.

### Petitions of WINFREY et al.

### No. 17505.

District Court, W. D. Missouri, W. D.

Aug. 28, 1943.

Cornelius Roach and Daniel L. Brenner, both of Kansas City, Mo., for bankrupt.

John C. Grover and Jacob L. Milligan, both of Kansas City, Mo., for trustee.

Paul V. Barnett and James E. Goodrich, both of Kansas City, Mo., for Commerce Trust Co., trustee under trust indenture.

Joseph M. Lapin, of Kansas City, Mo., for Park D. Crawford et ux.

J. H. Greene, Jr., of Kansas City, Mo., for Emery L. Foster et ux.

L. N. Musser, of Kansas City, Mo., for Mark Y. Hanes et ux.

J. Francis O'Sullivan, of Kansas City, Mo., for John P. Winfrey et ux.

Louis J. Pelofsky, of Kansas City, Mo., for Alphonse Arnone et ux.

C. V. Kretsinger, of Kansas City, Mo., for Frank B. Kenning et ux.

P. H. Jackson, of Kansas City, Mo., for Arnold L. Craven et ux.

COLLET, District Judge.

The material facts are not in dispute and may be stated as follows:

The claimants are both borrowers of and lenders to the predecessor to the bankrupt United Funds Management Corporation. They are borrowers in that they secured loans upon their real estate for which they gave their note secured by deed of trust on the real estate. The notes were payable on a given date and the rate of interest legal. They were lenders in that, contemporaneously with the execution of the note and deed of trust aforesaid, they purchased a bond from the bankrupt under the following terms—that they were to pay a stipulated amount per month for a stated number of months at the end of which term they would mature the bond in a face

amount equal to the principal amount of the loan. The bond, amounting to a long-term loan to the bankrupt, paid a lower rate of interest than the bankrupt charged on the short-term loan secured by the deed of trust. The transactions constituted separate agreements in a sense and in another sense they both constituted one transaction. They were separate in that the claimants herein could cancel the bond purchase agreement at any time they desired after making a stipulated number of monthly payments and receive from the bankrupt the stipulated cash surrender value of the bond. Otherwise stated, the claimants could call their loan to the bankrupt by suffering certain penalties for the premature calling of the loan. The agreements were corelated in that the bonds were held by the bankrupt as additional security for the payment of the loan by the property owner which was evidenced and secured by the note and deed of trust. They were corelated also by the fact that the bonds could be cancelled only in the event the interest payments on the notes were not in default, and that so long as the monthly payments were made upon the bond and the interest on the note that the bankrupt would extend the note for additional periods of one year or make new loans without expense to the borrower from time to time until default occurred or until the bond had been matured. The transactions were corelated also in that it was obviously the unexpressed intention of the parties that the face amount of the bond when paid by the bankrupt to the borrower would be used by the borrower to pay the equivalent principal amount of the borrower's note. The bankrupt had the right to assign the note, the deed of trust and the bond which it did do, the assignee being the Indenture Trustee, the Commerce Trust Company. Upon adjudication in bankruptcy of the bankrupt, United Funds Management Corporation, the Commerce Trust Company was holding and now holds these assigned instruments. The present controversy is whether the assignee, Commerce Trust Company, may enforce the payment of the principal amount of the notes by foreclosure of the deed of trust if necessary, without crediting on the notes the total amount of the payments made on the bond or whether those payments made on the bond shall be credited on or off-set against the amount due on the note.

The claimants—the property owners— assert that the various agreements constituted only one transaction with the result that the bankrupt was exacting interest at a usurious rate which invalidates the collection of the excessive interest with the result that in some instances when the legal rate (6%) of interest is calculated and the payments made on the bonds are applied on the notes the notes have been fully discharged. Those claimants ask that an order be entered cancelling the notes and deeds of trust and requiring the return of those documents, while the other claimants ask that an order be made requiring the application of the payments made on the bonds to the discharge of the notes and permission given them to pay the balance due on the notes, discharging the notes and releasing the deeds of trust.

The interest charged is not usurious as the notes and deeds of trust on the one hand and the bonds on the other are two separate and distinct transactions for the purpose of determining the return to the respective parties of the loan by the bankrupt to the property owner in the one instance and the loan by the property owner to the bankrupt in the other. One is a long-term loan with a corresponding low rate of interest and the other is a short-term loan with a comparatively high rate of interest—both well within the limit of 8 per cent provided by the Missouri statute.

But the two transactions are so corelated that so long as both agreements remain active the ultimate objective of the parties, to-wit, that the matured value of the bonds shall be applied to the discharge of the principal amount of the notes, should be recognized as the continuing object, intent and purpose of the parties. Only in the event that the property owner exercised the right to terminate this contemplated purpose by surrendering the bonds for the cash surrender value should the agreements lose their characteristic of being so corelated that the payments on the bonds will not be considered as payments on the principal amount of the note. Arguendo, it should be noted that the exercise of this right by the property owner is contingent upon the absence of any default either in the monthly payment of the monthly installment on the bond or the monthly payments of interest on the note. If the conditions authorizing the exercise of the privilege exist and the property owner does surrender the bond for the cash surrender value then the bankrupt is no longer under any obligation to extend the time of

payment of the principal amount of the note and the result would be a short-term loan with the right of comparatively imminent foreclosure. But so long as both agreements are carried along together it seems to be the clear intention that the payments on the bond were for the purpose of accumulating a fund with which to pay the note and since those funds were held by the bankrupt prior to its adjudication as a bankrupt, and subsequently by the Indenture Trustee, that intention and purpose should be carried out. In each of the instances represented by the present claims both agreements were in full force at the time of bankruptcy. And hence in respect to each of the present claims the payments made on the bonds should be applied to the discharge of the notes. If any balance remains due on the notes, the makers thereof should and will be permitted to discharge the notes by the payment of the balance due.

If the parties consider more formal findings of fact necessary or desirable, they may submit such findings for consideration not inconsistent with the conclusions heretofore expressed and without waiving their rights to exceptions for the failure of the Court to make other and additional findings.

Each of the claimants may submit for consideration formal orders relative to their specific claims.